# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARPARTAP SINGH, | Case No. 1:25-cv-02038-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND RELEASE PETITIONER ON APPROPRIATE CONDITIONS |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of India who was placed in removal proceedings and charged under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). On March 24, 2025, Petitioner admitted the allegations and conceded removability. Petitioner filed an application for asylum and withholding of removal. On September 15, 2025, an immigration judge ("IJ") denied asylum and ordered Petitioner removed to India, subject to a grant of withholding of removal. (ECF No. 8 at 7, 9–12.) Petitioner did not appeal and there are no pending appeals or motions related to Petitioner's immigration court proceedings. (ECF No. 8 at 7.[1]) Petitioner has been detained in Department of Homeland Security ("DHS") custody since January 26, 2025. (ECF No. 1 at 5.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

On January 5, 2026, U.S. Immigration and Customs Enforcement ("ICE") issued a Decision to Continue Detention, which stated that Petitioner would not be released and would remain detained pending removal from the United States and that ICE determined to maintain custody because Petitioner had not demonstrated that, if released, he would not pose a danger to the community or a risk of flight and because he had been ordered removed by an immigration judge. (ECF No. 8 at 14–17.) Enforcement and Removal Operations ("ERO") is currently processing Petitioner for third country removal to Nigeria because Petitioner previously traveled to Nigeria on a temporary work visa. (Id. at 7.)

On December 29, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On March 6, 2026, Respondents filed a response to the petition. (ECF No. 8.) On March 19, 2026, the Court granted Petitioner's motion to appoint counsel. (ECF No. 10.)

On March 29, 2026, Petitioner filed a motion to amend the petition. (ECF No. 13.) On April 6, 2026, Respondents filed a response, stating that they "do not object to Petitioner's request for leave to amend the Habeas Corpus petition previously filed in this case" and "further rest on their previously filed response to Petitioner's original petition and reincorporate the arguments contained therein." (ECF No. 15.) On April 8, 2026, the Court granted the motion to amend, and Petitioner filed a first amended petition ("FAP"). (ECF Nos. 16, 17.) On April 13, 2026, Petitioner filed a reply in support of the FAP. (ECF No. 18.)

On April 20, 2026, Petitioner filed a motion for temporary restraining order ("TRO"). (ECF No. 21.) The district judge denied the motion for TRO as untimely. (ECF No. 22.)

**II.**

**DISCUSSION**

In the FAP, Petitioner "seeks immediate release under appropriate conditions of supervision because his continued detention is unauthorized by §1231(a)(6), as construed in Zadvydas, and violates the Fifth Amendment." (ECF No. 17 at 3.) Respondents contend that Petitioner's detention is lawful pursuant to § 1231(a)(6) given that "Petitioner's removal is reasonably likely in the near future" because "[o]nce Nigeria issues the travel documents, Petitioner's order of removal will be executed." (ECF No. 8 at 2, 3.)

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."

Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Here, Petitioner is detained pursuant to § 1231(a)(6). (ECF No. 17 at 2; ECF No. 8 at 2.) The removal period began on October 15, 2025, when the time to appeal expired and the order of removal became administratively final, and the six-month presumptively reasonable period has lapsed. See 8 U.S.C. § 1231(a)(1)(B)(i) ("The removal period begins on the . . . date the order of removal becomes administratively final."); 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]").

Respondents have submitted a declaration of a deportation officer that states: "ERO is currently processing Petitioner for Third Country Removal to Nigeria. Before traveling to the United States, Petitioner traveled to Nigeria on a Temporary Work Visa. As of March 2, 2026, a Travel Document Request has been sent to the Nigerian Embassy in Washington, D.C." (ECF No. 8 at 7.) Petitioner argues:

> Respondents acknowledge that Petitioner has a final order of removal, that he was granted withholding of removal as to India, and that he therefore cannot be removed to India. Dkt. 8 at 1-3, 7, 9-12. They further contend that he is detained under 8 U.S.C. §1231(a)(6), and that DHS is pursuing possible third-country removal to Nigeria based on a prior temporary work visa and a travel-document request sent to the Nigerian Embassy. Dkt. 8 at 2, 7. But Respondents still do not say that Nigeria has agreed to accept Petitioner, that travel documents have issued, that removal has been scheduled, or that removal will occur on any date certain. Instead, they say only that "[o]nce Nigeria issues the travel documents, Petitioner's order of removal will be executed." Dkt. 8 at 3.

4

> That conditional assertion does not satisfy Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner's continued detention remains unlawful under 8 U.S.C. §1231(a)(6) and the Fifth Amendment.

(ECF No. 18 at 2.)

The Court finds that Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, 533 U.S. at 701, "because he cannot be removed to [India], he does not have citizenship or *significant* ties to [Nigeria], and there is no evidence that [Nigeria] is willing to accept Petitioner's third country removal under 8 U.S.C. § 1231(b)(2)(E)." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (emphasis added). See Ndandu v. Noem, No. 3:25-CV-02939-RBM-MSB, --- F. Supp. 3d ----, 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) ("Even when authorized, third country removal still requires the affirmative assent of the receiving country."). "Courts routinely find that noncitizens under such circumstances have met their initial burden under *Zadvydas*." Elshourbagy, 817 F. Supp. 3d at 1109.

"Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

> For example, in *Singh v. Gonzales*, the court found that ICE had not met its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government." 448 F. Supp. 2d at 1220. And in *Chun Yat Ma v. Asher*, the court considered an affidavit from an ICE official that included a statement that an individual's travel documents would "likely" be issued soon. 2012 WL 1432229, at *4. Yet, the court noted, a deportation officer could not give any "indication of when the issuance may occur." *Id.* As the court concluded, "[t]he conflicting statements concerning removal, together with the Government's failure to provide a current affidavit or any sort of reliable evidence that removal is likely weighs in favor of finding that Petitioner's removal is unlikely to happen in the reasonably foreseeable future." *Id.*

Nguyen, 796 F. Supp. 3d at 725. In Nguyen, the district court found the government did not meet its burden where a request for travel documents was sent to Vietnam but it was unclear "if Vietnam has acknowledged or otherwise responded to the request" or "how long Petitioner may have to wait for travel documents—if Vietnam even decides to provide them." Id. at 726. Similarly, here, the deportation officer declaration merely states that a travel document request

has been sent to the Nigerian Embassy, but there is no indication when, or even if, the Nigerian government will issue any travel documents. Accordingly, the Court finds that Respondents have not responded with evidence sufficient to rebut Petitioner's showing.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699–700. See Huang v. Albarran, No. 1:25-cv-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not leave or is not removed within the 90-day removal period, the individual, 'pending removal, shall be subject to supervision.' 8 U.S.C. § 1231(a)(3). 'As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.' *Alva*, 2025 WL 2419262, at *3. Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same regulations also govern revocation of release."). Accordingly, the Court finds that Petitioner's continued detention is unreasonable and no longer authorized by 8 U.S.C. § 1231(a)(6)[2] and that Petitioner should be released on appropriate conditions.

## III.

## RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 17) be GRANTED on Claim One; and

2. Petitioner be released, subject to an order of supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

///

---

[2] In light of the conclusion that Petitioner's continued detention is not authorized by statute, the Court declines to address whether Petitioner's continued detention violates the Due Process Clause.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 20, 2026**

STANLEY A. BOONE
United States Magistrate Judge